# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**79**

**KA 13-00543**

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, SCONIERS, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

                  V                      MEMORANDUM AND ORDER

ROBERT L. WILLIAMS, JR., DEFENDANT-APPELLANT.

---

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (TIMOTHY P. MURPHY OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (MATTHEW B. POWERS OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (M. William Boller, A.J.), rendered September 10, 2012. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that the police improperly stopped the vehicle in which he was a passenger, and that Supreme Court therefore erred in refusing to suppress a handgun seized from the vehicle after the stop. We reject that contention. Here, an unidentified man called 911 and reported that, near a specific location, there were "[s]ome guys in a white car and they look[ed] like they [were] about to fight and one of the guys pulled out a gun." Two police officers on routine patrol in the area had just left that location and had observed a white vehicle parked on the wrong side of the road. Two men were standing outside the vehicle, and a group of about 15 people were in the general vicinity. The police pulled over, and asked one of the two men standing closest to the vehicle to move it because it was illegally parked. The two individuals entered the white vehicle and drove away. After the officers received the 911 dispatch, they located the white vehicle a few blocks away. After following the vehicle for a short period of time, the police executed a traffic stop and removed the driver and defendant, the front seat passenger. A subsequent search of the vehicle yielded a handgun underneath the front passenger seat.

We conclude that the police had reasonable suspicion to stop the vehicle based upon the contents of the 911 call and the confirmatory

observations of the police (*see People v Argyris*, ___ NY3d ___, ___ [Nov. 25, 2014]; *People v Moss*, 89 AD3d 1526, 1527, *lv denied* 18 NY3d 885; *see also Navarette v California*, ___ US ___, ___, 134 S Ct 1683, 1692). Here, unlike in *Florida v J.L.* (529 US 266), "the report of the 911 caller was based on the contemporaneous observation of conduct that was not concealed" (*People v Jeffery*, 2 AD3d 1271, 1272; *see Navarette*, ___ US at ___, 134 S Ct at 1688-1689; *People v Argyris*, 99 AD3d 808, 809, *affd* ___ NY3d ___; *People v Herold*, 282 AD2d 1, 7, *lv denied* 97 NY2d 682), and the caller's statements were corroborated in part by the observations of the police (*see Jeffery*, 2 AD3d at 1272; *cf. J.L.*, 529 US at 270; *People v William II*, 98 NY2d 93, 99). Moreover, there are other "indicia of the 911 caller's reliability" in this case (*Navarette*, ___ US at ___, 134 S Ct at 1692; *see People v Rivera*, 84 AD3d 636, 636, *lv denied* 17 NY3d 904). After reporting the presence of a man with a gun, the caller told the 911 operator that he was "about to get off the phone [be]cause [he] did[n't] want [any]body to know [he was] doing this," and "I have to hurry up and get out of here." Thus, the record reflects that the call was made contemporaneously with the caller's observations and while he was still "under the stress of excitement" that such observations caused (*Navarette*, ___ US at ___, 134 S Ct at 1689; *see Rivera*, 84 AD3d at 636).

Entered:  March 20, 2015                              Frances E. Cafarell
                                                       Clerk of the Court