People v Thomison (2025 NY Slip Op 02938)

People v Thomison

2025 NY Slip Op 02938

Decided on May 14, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 14, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
PAUL WOOTEN
HELEN VOUTSINAS
LOURDES M. VENTURA, JJ.

2023-09939
 (Ind. No. 70200/23)

[*1]The People of the State of New York, respondent,
v
Rasheem J. Thomison, appellant.

Carol Kahn, New York, NY, for appellant.
Anthony P. Parisi, District Attorney, Poughkeepsie, NY (Amie M. Johnson of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Dutchess County (Edward T. McLoughlin, J.), rendered October 4, 2023, convicting him of criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the fourth degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to the County Court, Dutchess County, for further proceedings consistent with CPL 160.50.
At the suppression hearing, a sergeant from the City of Poughkeepsie's police department and two other officers testified that on February 25, 2023, at approximately 1:17 a.m., they were responding to a tip from a known informant about a "possible menacing" with a weapon at the Derby Bar and Grill (hereinafter the Derby). The informant reported that the suspect was a black male wearing a black leather jacket and blue jeans and that he had left the area in a white Jeep. Prior to stopping the defendant, the responding officers investigated two other vehicles. The officers checked a parked Jeep Grand Cherokee and engaged in a stop of a black male who happened to be in a white SUV wearing a leather jacket. This individual was stopped by officers and questioned extensively outside his vehicle before the call came over the dispatch that the individual being sought had returned to the area and parked across the street from the Derby.
When the sergeant responded to the street where the Derby was located, he noted that the only vehicle fitting the description was a white Hyundai Santa Fe parked across from the Derby. The defendant was in the driver's seat. The defendant started driving away from the area, allegedly entering the lane of travel without signaling. The sergeant pulled the defendant over.
The sergeant asked the defendant to exit the vehicle. The defendant was a black male and was wearing a dark brown leather jacket, blue jeans, and a black hooded sweatshirt. The sergeant handcuffed the defendant and told him that he was conducting a police investigation. The sergeant was then approached by another officer who informed him that a handgun was in plain view under the passenger floorboard in the defendant's vehicle. The defendant was placed under arrest. [*2]A third officer searched the defendant, recovering a clear plastic bag containing several smaller bags of a white powdery substance that was later determined to be cocaine.
Following the suppression hearing, the County Court denied that branch of the defendant's omnibus motion which was to suppress the physical evidence recovered during the stop. The defendant ultimately pleaded guilty to criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the fourth degree, without waiving his right to appeal.
"On a motion to suppress physical evidence, the People have the burden of establishing that the police conduct was legal in the first instance" (People v Meraluna, 235 AD3d 1001, 1003, citing People v Messano, 41 NY3d 228, 233, and People v Walls, 37 NY3d 987, 988). "'It is fundamental that in order to stop a vehicle the police must have a reasonable suspicion, based on objective evidence, that the occupants were involved in a felony or misdemeanor'" (id., quoting People v Ahmad, 193 AD3d 961, 962; see People v Walls, 37 NY3d at 988; People v Harrison, 57 NY2d 470, 476). "Reasonable suspicion has been defined as 'that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand'" (People v Meraluna, 235 AD3d at 1003, quoting People v Martinez, 80 NY2d 444, 448; see People v Messano, 41 NY3d at 232). "[R]esolution of this issue requires an evaluation of the totality of the circumstances" (People v Hernandez, 223 AD3d 751, 754).
When the People seek to rely on information provided by an informant to establish the reasonable suspicion necessary to justify a vehicle stop, "'it [is] essential that at least some showing be made of the basis of the informant's knowledge'" (People v Evans, 106 AD2d 527, 530, quoting People v Earley, 76 AD2d 335, 341). Where there is no testimony demonstrating how the informant knew the defendant was engaged in illegality, such as the possession of a weapon, reasonable suspicion cannot be found (see People v William II, 98 NY2d 93, 99).
At the suppression hearing, the People failed to offer evidence demonstrating the basis of the informant's knowledge. The testimony of the sergeant described the call to the 911 emergency number as a "possible menacing" by a black male with a leather jacket who left the scene in a white Jeep. Another officer testified that they knew they were looking for a "man with a gun." Neither the sergeant nor the officer testified as to how the informant, who had called the 911 emergency number, knew that the defendant had a gun. Therefore, the People failed to demonstrate that the information provided by the informant constituted "more than unsubstantiated rumor, unfounded accusation or conclusory characterization" (People v Mortel, 197 AD3d 196, 204 [internal quotation marks omitted]).
In the absence of the People eliciting testimony at the suppression hearing that sufficiently explained how the informant knew the defendant was in possession of a weapon, the County Court erred in concluding that the officers had reasonable suspicion to stop the defendant (see People v Vazquez, 211 AD3d 1052). Moreover, while the informant did identify the defendant from across the street, this identification occurred well after the defendant had been stopped and detained by the officers. "'Where a police encounter is not justified in its inception, it cannot be validated by a subsequently acquired suspicion'" (id. at 1054, quoting People v William II, 98 NY2d at 98).
Additionally, while the informant, who was known to the responding officers, may be presumed to be reliable, the basis of his knowledge was not sufficiently established at the suppression hearing. The basis of the informant's knowledge may well have been nothing more than unsubstantiated rumor, which is insufficient to provide a reasonable suspicion of criminality (see People v Parris, 83 NY2d 342, 348-351).
The People have proffered an alternate reason for the stop of the defendant. The People contend that the defendant's failure to use his turn signal when he was pulling away from the curb where his vehicle was parked was sufficient cause to stop the defendant. However, a stop based on a traffic infraction does not, without reasonable suspicion of criminal activity, permit the forcible detention of the defendant, in handcuffs, behind his vehicle (see People v Hinshaw, 35 NY3d 427). The police, of course, were free to investigate and question the defendant based on that traffic [*3]violation, and the other violations that arose from that stop, such as the tickets the defendant received for having an unregistered and uninsured vehicle and being an unlicensed operator. However, there is no testimony in the record demonstrating how the traffic stop, independently of the informant's call, gave the officers the reasonable suspicion necessary or an articulated safety reason to remove the defendant from his vehicle, handcuff him behind his vehicle, and look within the vehicle for the weapon that was recovered. The defendant's alleged failure to utilize his turn signal, standing alone, would not have allowed the sergeant to conclude that criminal activity was at hand (see People v Ahmad, 193 AD3d 961).
Accordingly, there being insufficient testimony in the record to support the officers having a reasonable suspicion the defendant possessed a weapon, that branch of the defendant's omnibus motion which was to suppress physical evidence should have been granted. Since there would not be legally sufficient evidence to prove the defendant's guilt without the suppressed evidence, the indictment must be dismissed (see People v Maiwandi, 170 AD3d 750, 752).
In light of our determination, we need not reach the defendant's remaining contentions.
DUFFY, J.P., WOOTEN, VOUTSINAS and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court